THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Donna L.
 McCall, Appellant,
 
 
 

v.

 
 
 
 Sandvik, Inc. and
 Sentry Insurance Company, Respondents.
 
 
 

Appeal from the Appellate Panel
 South Carolina Workers' Compensation
Commission 

Unpublished Opinion No. 2012-UP-153   
 Heard December 6, 2011  Filed March 7,
2012

AFFIRMED IN PART, REVERSED IN PART, AND
 REMANDED

 
 
 
 Larry C. Brandt, of Walhalla, for
 Appellant.
 Grady L. Beard, of Columbia, for
 Respondents.
 
 
 

PER CURIAM:    In this workers' compensation case, Donna McCall appeals from the order of the Appellate Panel of the South
 Carolina Workers' Compensation Commission (Commission) affirming the single
 commissioner's finding that her claim for repetitive trauma injury (RTI) to her
 bilateral wrists was barred because she had failed to give timely notice
 pursuant to section 42-15-20 of the South Carolina Code.  We affirm in part,
 reverse in part, and remand. 
Initially, McCall contends the
 Commission erred in admitting into evidence the medical records of Dr. Felipe Amaya,
 a neurologist she consulted in 1999.  McCall
 argues Dr. Amaya, at the time of the
 hearing, was "incompetent to testify as to any professional opinions"
 because his license to practice medicine had been permanently revoked and he
 was no longer licensed to practice in any state.  Furthermore, McCall argues Dr.
 Amaya's records were inadmissible because section
 42-1-172 of the South Carolina Code, which governs compensability of RTI, requires
 medical evidence "offered by a licensed and qualified physician."
The Commission used Dr.
 Amaya's records for the limited purpose of determining whether McCall's notice
 was timely under section 42-15-20.  See S.C. Code Ann. § 1-23-330 (2005)
 (stating that while the rules of evidence do not apply in contested cases
 before the Commission, "[i]rrelevant, immaterial, or unduly repetitious
 evidence shall be excluded").  Section 42-1-172 was not invoked because
 the Commission did not reach the question of whether McCall's RTI was
 compensable.  See Michau v. Georgetown Cnty., Op. No. 27604 (S.C.
 Sup. Ct. refiled February 1, 2012) (Shearouse Adv. Sh. No. 4 at 26).  Consequently,
 we find no error in the admission of Dr. Amaya's records under the more relaxed
 admissibility provisions of section 1-23-330.
As to the timeliness of
 McCall's notice, there was no substantial evidence to support the Commission's
 finding that McCall "discovered or could have discovered her condition was
 compensable as early as 1999, when she was diagnosed with carpal tunnel
 syndrome."  We disagree with the Commission's finding that Dr. Amaya's
 letter of December 10, 1999 was sufficient to establish that McCall was
 "diagnosed" with her current conditionor, for that matter, that she
 was diagnosed with any condition.  The December
 10, 1999 letter from Dr. Amaya to McCall's family physician was a general "assessment"
 at a time when McCall was seeking treatment for tremors and was not experiencing
 symptoms of carpal tunnel syndrome.  Dr. Amaya noted the absence of carpal
 tunnel syndrome symptoms as follows: "mild right [carpal tunnel syndrome],
 now without [symptoms]."  Further, Dr. Amaya did not notify McCall of his assessment
 of carpal tunnel syndrome.  McCall continued to work until 2007, one year
 following her fall at work.  She sought no medical treatment for the gradual
 development of pain in her arms and hands, and Dr. David Rogers, who diagnosed
 McCall's carpal tunnel syndrome on November 29, 2007, was the first doctor who notified
 her that she had carpal tunnel syndrome. 
Even had McCall been
 diagnosed with RTI in 1999, it was unclear at that time what notice, if any,
 she would have been obligated to provide.  In 1999, the South Carolina Code
 contained no reference to RTI.  Further, the common law had not yet determined
 whether RTI was an injury by accident, which required notice pursuant to
 section 42-15-20, or an occupational disease, which required notice within
 ninety days of disability.  See Pee v. AVM, Inc., 352 S.C. 167,
 173, 573 S.E.2d 785, 788 (2002) ("Whether a repetitive trauma injury is
 compensable either as an injury by accident or an occupational disease has not
 been squarely addressed by this Court.").  Notably, in 2005, this court
 applied section 42-15-20 to a claimant's RTI and held "[n]otice begins to
 run when the employee becomes disabled and could discover with
 reasonable diligence his condition is compensable."  Bass v.
 Isochem, 365 S.C. 454, 481, 617 S.E.2d 369, 383 (Ct. App. 2005) (emphases
 added).           
Moreover, McCall's
 admission"she knew the job caused the problems"was insufficient to
 support the Commission's finding that she had reason to believe she had a
 "compensable" condition prior to either her carpal tunnel syndrome diagnosis
 on November 29, 2007 or her inability to work resulting from carpal tunnel
 syndrome.  In 2007, the legislature added subsection (C) to section 42-15-20,
 effective July 1, 2007, which states, in pertinent part: "In the case of repetitive trauma, notice must be given by
 the employee within ninety days of the date the employee discovered, or could
 have discovered by exercising reasonable diligence, that his condition is
 compensable . . . ."  S.C. Code Ann. § 42-15-20(C) (Supp. 2011).  This
 court interpreted subsection (C) in King v. International Knife and
 Saw-Florence:  "[A] work-related repetitive trauma injury does not
 become compensable, and the ninety-day reporting clock does not start, until
 the injured employee discovers or should discover he qualifies to receive
 benefits for medical care, treatment, or disability due to his condition." 
 395 S.C. 437, 444, 718 S.E.2d 227, 231 (Ct. App. 2011).  The court found a
 distinction existed between work-related aches and pains and a compensable
 condition:

 [A]
 mere work-related ache does not constitute a compensable condition, regardless
 of whether the employee later develops an injury.  The Act requires an injured
 employee to be diligent, not prescient.  King's condition was not compensable
 until it either required medical care or interfered with his ability to perform
 his job, whichever occurred first.

Id. at 445,
 718 S.E.2d at 231.
Therefore, McCall's obligation
 to provide notice under section 42-15-20(C) was triggered only after her RTI required medical care or interfered with her ability
 to perform her jobneither of which occurred prior to her diagnosis on November 29, 2007.  Because McCall gave notice of her RTI on January 30, 2008well within the ninety-day period
 required under section 42-15-20(C)we reverse
 the Commission's conclusion that McCall failed to provide timely notice of her
 RTI and remand for a determination of compensability pursuant to section
 42-1-172.
AFFIRMED IN
 PART, REVERSED IN PART, and REMANDED.
SHORT,
 WILLIAMS, and GEATHERS, JJ., concur.